Benjamin Brenner, J.
Plaintiff seeks a preference under article III of the Special Readiness Rule of the Appellate Division, Second Department (eff. March 1, 1962), for the granting of preferences in personal injury actions. He has refused to submit his own medical reports, presumably because medical reports cannot be exchanged in the light of defendant’s refusal to conduct a physical examination of the plaintiff.
Article III (§1, subd. [b], par. [iii]) would appear to indicate that the only medical reports which the plaintiff need submit at the time he requests a preference are such reports which he is required by article II to furnish to the defendant. And, under article II, plaintiff is required to furnish copies of his medical reports to the defendant after the latter either requests a physical examination or responds to a notice by the plaintiff *178 that he is ready to be examined pursuant to section 1 of article II. There should, however, be some proof in the papers submitted to the court that such notice has been afforded the defendant. Accordingly, the Justices of the Supreme Court, Kings County, assigned to Special Term, Part VIII, have adopted a procedure which requires that, upon application for a preference, where no report by defendant’s doctor is submitted, a copy of the notice to the defendant that the plaintiff is available for physical examination, with proof of service thereof, and a statement that defendant has not responded thereto or has failed to conduct said examination, must be included. These papers have not been filed by this plaintiff and until they are, a preference cannot be granted.
It is obvious, moreover, that in a situation where the plaintiff need not furnish his medical reports to the defendant pursuant to article II, he is nevertheless required to submit such reports to the court on an application for a preference. To hold otherwise would deprive the court of all medical information though plainly needed to determine whether a preference is warranted.
Now that the new Special Bule has been promulgated, several observations as to it are in order. If the plaintiff had actually served the notice aforesaid, and there was no response thereto, or the defendant failed to conduct said physical examination, the latter could be compelled to do so by motion under section 10 of article II. If the defendant still refuses to examine, and disobeys an order for such examination, he would be precluded by section 8 of article II from offering at the trial of the action any and all evidence, inclusive of expert medical evidence, as to plaintiff’s injuries. This is a penalty clearly intended by section 8 of article II to be visited upon a defendant for his failure to “ sel forth ” his version of the injuries. It is a reasonable penalty to the defendant, for, in such circumstances, only the plaintiff squarely meets the issue as to injuries. Plaintiff does so by submitting his medical proof, not only to enable the court to pass on his request for a preference under article III, but, when he files his papers for the preference, he exposes his medical information to all the world, including the defendant, and thereby limits the issues as to claimed injuries. This disclosure by plaintiff, it would seem to me, should be construed as satisfying the requirements by plaintiff of section 8 of article II, that the injuries be set forth.
Of course, if the defendant declines to examine and the plaintiff is content to proceed to trial without his own examination by the defendant, no penalty to the defendant could or should *179 ensue. But if plaintiff insists on his own physical examination and obtains an order for same the defendant should not be permitted to sit back, decline to co-operate in the exchange of medical information, await tidal, and then present medical testimony, expert or otherwise. To allow him to do so would only defeat the salutary objective for limiting the issues as to injuries through mutual disclosure of that information. It would also thereby subject the plaintiff to the double burden of unilateral disclosure and the prospect of meeting upon trial previously unrevealed claims designed to minimize the injuries set forth by him.
Nor would it be sufficient to preclude a defendant only as to prospective testimony of an examining doctor in a case where he violates article II by refusing to serve a report of an examination of the plaintiff actually held. In such case, if the report is favorable to plaintiff, the latter would be subjected to yet a further double prejudice — the unilateral disclosure and an inability to examine the defendant’s doctor who is in a position to testify favorably to plaintiff — a rather quixotic result — for the true preclusion would then fall upon the innocent and co-operating party only. Thus, where a defendant fails to examine the plaintiff following an order to such effect, or fails to furnish the report of an examination actually conducted, he should justly forfeit the right to offer independent medical proof, including expert medical proof, as to injuries which he has declined to put at issue.
Obviously, once the medical information is exchanged and the issues as to injuries thus narrowed, the preclusion of testimony should be confined only to those examining doctors whose reports have not been furnished, but with opportunity to both parties to freely offer expert medical testimony. Finally, it is to be observed that the defendant need not examine or serve a report of an examination if, by ignoring the Special Rule, he chooses to rely only upon cross-examination and to refrain from introducing independent medical proof.
The application for a preference under article III is accordingly denied with leave to renew upon the submission of the papers above indicated, with further leave to plaintiff to move to preclude the defendant from offering all medical evidence upon compliance by plaintiff and noncompliance by defendant with articles II and III of the Special Rule aforesaid.